IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

SANDRA DAVIS,

     *Plaintiff*,

v.                                     CASE NO.: 9:19-cv-80606-RS

NATIONWIDE INSURANCE COMPANY
OF AMERICA,

     *Defendant*.

_____/

## NON-PARTY GEICO'S OBJECTION TO PLAINTIFF'S NOTICE OF PRODUCTION FROM NON-PARTY AND MOTION TO QUASH SUBPOENA AND/OR MOTION FOR PROTECTIVE ORDER

     Non-Parties, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company (collectively "GEICO"), by and through undersigned counsel, and pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, hereby files this Objection to Plaintiff's Subpoenas and Notices of Production from Non-Party directed to Non-Party GEICO and GEICO's employees, The Law Office of Jeffrey Hickman, GEICO Staff Counsel ("the Hickman Firm"), and Motion to Quash and/or Motion for Protective Order, and as grounds therefore, states as follows:

     1.     The present case is a bad faith action brought by Plaintiff, Sandra Davis ("Plaintiff"), against her insurer, Nationwide Insurance Company of America ("Defendant").

     2.     On November 12, 2020, Plaintiff served on GEICO a Subpoena and Notice of Production from Non-Party, seeking production regarding GEICO Claim No. 0360613650101037, brought by Jessica Muro as a result of an automobile accident that occurred on September 4, 2011 involving Plaintiff and Dwayne McDonald, GEICO Indemnity Company's ("GEICO Indemnity") insured.  [*See* Notice of Non-Party Production directed to GEICO attached as Exhibit 'A'].  Said

Notice of Production seeks:

> a.     Any and all correspondence and/or emails related to the above referenced accident, claim, and resulting lawsuit.
> b.     Any and all internal memorandums, notes, reports, and/or documents relating to the above referenced accident, claim, ad [sic] resulting lawsuit.
> c.     All medical records or external records pertaining to Jessica Muro.

The subpoena was limited in time from the date of the accident to May 21, 2012, the date Mr. McDonald accepted a proposal for settlement in the underlying action. Said acceptance removed Mr. McDonald as a litigant in the underlying action and resolved Ms. Muro's GEICO claim. [*See* McDonald Dismissal attached as Exhibit 'B'].

3.     On November 12, 2020, Plaintiff served on the Hickman Firm a subpoena and Notice of Production from Non-Party, seeking production regarding GEICO Claim No. 0360613650101037, brought by Jessica Muro as a result of an automobile accident that occurred on September 4, 2011 involving Plaintiff and Dwayne McDonald, GEICO Indemnity's Insured. [*See* Notice of Non-Party Production directed to the Hickman Firm attached as Exhibit 'C']. Said Notice of Production seeks:

> a.     Any and all correspondence and/or emails related to the above referenced accident, claim, and resulting lawsuit.
> b.     Any and all internal memorandums, notes, reports, and/or documents relating to the above referenced accident, claim, ad [sic] resulting lawsuit.
> c.     All medical records or external records pertaining to Jessica Muro.

4.     The Hickman firm, an employee of GEICO General Insurance Company, was referred the defense of Mr. Donald in the underlying action by GEICO Indemnity Company, Mr. McDonald's insurer. [*See* Notice of Appearance by the Hickman Firm attached as Exhibit 'D'].

5.     GEICO collectively objects to the two Subpoenas and Notices of Non-Party Production as they seek to invade its attorney-client privilege with the Hickman Firm, violative of the work-product doctrine, irrelevant, and unduly burdensome.

**WHEREFORE**, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company respectfully request this Honorable Court quash the Subpoenas and/or enter a Protective Order prohibiting Plaintiff from obtaining the documents which are not relevant, overly broad, unduly burdensome, and are clearly protected by the attorney-client privilege and work-product doctrine, and grant any further relief this Court deems just and proper.

## MEMORANDUM OF LAW

### I.    Standard of Review

Federal Rule of Civil Procedure 45 governs the ability of courts to quash subpoenas. Indeed, "[o]n timely motion, the court by which a subpoena was issued **must quash** or modify a subpoena that . . . requires disclosure of privileged or other matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii)(emphasis added).  Further, "although Rule 45 does not identify relevance as a reason for quashing a subpoena, the scope of discovery for a subpoena seeking documents is the same as that under Rule 26(b)." *Martin v. National Union Fire Insurance Co. of Pittsburg, PA*, 2013 WL 12156516 *1 (M.D. Fla. 2013), *citing Kona Spring Water Distrib., Ltd. V. World Triathlon Corp., No*. 8:05-cv-119-T-23-TBM, 2006 WL 905516, at *2 (M.D. Fla. Apr 7, 2006); *see also* Fed. R. Civ. P. 45 advisory committee's note to the 1970 amendments (stating the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.").

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery.  This rule permits discovery of any relevant, **non-privileged** matter that is admissible or reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26 (b)(emphasis added).  Courts interpret relevancy "broadly to encompass any matter that bears on, or reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *See S. Gardens Citrus*

3

*Processing Corp. v. Barnes Richardson & Colburn*, 2012 WL 3848592 (M.D. Fla. Sept. 4, 2012)(citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  However, discovery has boundaries and the relevancy standard, while broad, is not so broad as to allow a party to explore matters which are not germane solely on the basis that they may eventually become germane to the case.  *Gavin's Ace Hardware, Inc. v. Federated Mut. Ins. Co.,* 2:11-CV-162-FTM-36, 2011 WL 5104476, at *2 (M.D. Fla. Oct. 27, 2011).  An irrelevant subpoena is subject to a Motion to Quash.  *Jordan v. Commissioner, Mississippi Department of Corrections*, 947 F.3d 1322, 1329 (11th Cir. 2020)("Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information.").

Rule 26(c) of the Federal Rules of Civil Procedure permits a court to make an order which justice requires "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed.R.Civ.P. 26(c)(1); *Moore v. Potter*, 141 Fed. Appx. 803, 807 (11th Cir. 2005).  Pursuant to the rule, a court may enter a protective order upon motion of a party "for good cause shown."  Good cause "generally signifies a sound basis or legitimate need to take judicial action."  *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987). Such decisions are committed to the sound discretion of the court.  *See Commercial Union Ins. Co. v Westrope*, 730 F.2d 729, 731 (11th Cir. 1984); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1315 (11th Cir. 2001)(whether good cause exists for a protective order is a factual matter to be decided by the nature and character of the information in question).  A court must balance the competing factors involved in determining whether good cause has been shown. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).  A subpoena seeking irrelevant information is subject to entry of a protective order.  *Francis v. US Airways, Inc.*, 2015 WL 12778642, at *2 (S.D. Fla. 2015).

4

## II.     The documents are protected by attorney-client privilege.

Where federal subject matter is based on diversity jurisdiction, the district court must apply the substantive law of the jurisdiction in which it sits.  *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990)("[t]he district court, having obtained jurisdiction through diversity of citizenship, is bound to apply the substantive law of the state in which it is located.") *citing Ere R.R. v. Tompkins*, 304 U.S. 64 (1938).  The attorney-client privilege is deemed to be substantive and is thus governed by state law in a federal diversity action. *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981).[1]  In Florida, the attorney-client privilege is codified by Florida Statute § 90.502, which provides in relevant part:

> [a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

Fla. Stat. § 90.502(2).  As the United State Supreme Court stated in *Upjohn Co. v. United States*, 449 U.S. 383, 388, 101 S.Ct. 677, 682 (1981), the attorney-client privilege is the "oldest of privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice."  The attorney-client privilege applies to corporations, as well as to individuals.  *See Southern Bell Telephone and Telegraph Co. v. Deason*, 632 So.2d 1377, 1380 (Fla. 1994).  The client is the exclusive holder of the privilege. *See XL Specialty Ins. Co. v. Aircraft Holdings, LLC*, 929 So.2d 578, 585-86 (Fla. 1st DCA 2006).

---

[1] Decisions rendered in the Fifth Circuit prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Courts utilize the following criterion in determining whether the attorney-client privilege exists: (1) the asserted holder of the privilege is a client; (2) the person receiving the communication is an attorney; (3) the communication relates to a fact received by the attorney from the client, without the presence of strangers, for purposes of obtaining legal advice or legal opinion, and (4) the privilege has been claimed and not waived by the client. *See In re Federal Grand Jury Proceedings*, 938 F.2d 1578 (11th Cir. 1991); *Universal City Development Partners, Ltd. v. Ride & show Engineering, Inc.*, 230 F.R.D. 688 (M.D. Fla. 2005); *C.P. Smith v. Armour Pharmaceutical Company*, 838 F.Supp. 1573 (S.D. Fla. 1993). In litigation involving an insurer's alleged bad faith conduct, the Supreme Court of Florida has held that, other than in limited circumstances (e.g., where a waiver was established), "when an insured party brings a bad faith claim against its insurer, the insured may <u>not</u> discover those privileged communications that occurred between the insurer and its [own] counsel during the underlying action." *Genovese v. Provident Life and Accident Ins. Co.*, 74 So.3d 1064, 1068 (Fla. 2011)(emphasis added). Communications between an insurer's adjuster and its counsel do not waive the insurer's attorney-client privilege. *See, e.g., Royal Bahamian Ass'n v. QBE Ins. Corp.*, 2010 WL 3637958 (S.D. Fla. Sept 20, 2010) (after in camera review, the court determined that communications with insurer's file adjuster were privileged and privilege had not been waived). Thus, the communications, including documents memorializing or referencing such communications, between GEICO and its counsel that were made in the rendition of legal services in response to litigation are protected attorney-client communications. *See Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666 (M.D. Fla. 2013).

In an insurance context, the communications between an insurer and its attorneys are protected by the attorney-client privilege when they are made while the attorneys are performing

in their professional capacity as attorneys.  *Genovese* v. *Provident Life and Accident Ins. Co.*, 74 So.3d at 1067 (stating that "[i]f a communication with a lawyer is not made with him in his professional capacity as a lawyer, no privilege attaches.")(citations omitted); *Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Group*, 2004 WL 5215191, *3 (M.D. Fla. 2004); *See Bankers Ins. Co. v. Florida Dept. of Insurance and Treasurer*, 755 So.2d 729 (Fla. 1st DCA 2000)(holding that the attorney client privilege did not apply where attorney was acting merely as a "conduit" for the insurer and not in a legal capacity).  The relevant inquiry is whether the tasks were related to the rendition of legal services.  If the tasks were related to the rendition of legal services, the attorney-client privilege applies.  *Id*.  Accordingly, communications between an insurer and counsel it retains to advise the insurer are protected under the attorney client privilege.  *See XL Specialty Ins. Co. v. Aircraft Holdings, LLC*, 929 So.2d 578 (Fla. 1st DCA 2006)(providing in a first-party bad faith claim against an insurer that the insured was not entitled to discovery from the insurer of documents relation to the underlying breach of contract action against the insurer that were covered by the attorney-client privilege).

Here, Plaintiff is seeking production of communications between GEICO and its attorney's in a bad faith action unrelated to GEICO's claims handling of Ms. Muro's claim.  The two subpoena's request the production of:

> a.   Any and all correspondence and/or emails related to the above referenced accident, claim, and resulting lawsuit.
> b.   Any and all internal memorandums, notes, reports, and/or documents relating to the above referenced accident, claim, ad [sic] resulting lawsuit.
> c.   All medical records or external records pertaining to Jessica Muro.

It is axiomatic that the communications between GEICO and its attorney's, which Plaintiff is requesting, are protected by attorney-client privilege.  GEICO, as the client, is the bearer of the privilege.  The Hickman firm are GEICO's attorney's, retained to advise GEICO and its insured

7

in the underlying litigation.  The sought-after communications relate to communications GEICO had with its retained counsel advising GEICO as to the underlying litigation.  Finally, GEICO has not waived attorney-client privilege in any fashion.

As such, the communications and documents between the Hickman firm and GEICO are clearly protected by the attorney-client privilege. *See Progressive American Insurance Company v. Lanier*, 800 So.2d 689, 691 (Fla. 1st DCA 2001)(holding that communications between insurer representatives and outside counsel constitute attorney-client communications which are not subject to discovery); *Progressive Express Ins. Co. v. Scoma*, 975 So.2d 461, 467 (Fla. 2d DCA 2007)(providing that an insured pursuing a bad faith claim against the insurer is unable to access the confidential communications between insurer and its separate counsel); *see Genovese v. Provident Life & Accident Ins. Co.*, 74 So.3d 1064 (Fla. 2011), *as revised on denial of reh'g* (Nov. 10, 2011)(holding that attorney-client communications are not discoverable in a first party bad faith action).

Manifest injustice would occur if GEICO is required to provide to Plaintiff attorney-client communications. It is clear that the documents Plaintiffs are seeking via the subpoena issued to the GEICO and the Hickman firm are protected by the attorney-client privilege, pursuant to Rule 45 of the Federal Rules of Civil Procedure, this Court must quash the subpoena. Further, it is clear that good cause exists for the entry of a protective order prohibiting Plaintiffs from obtaining these attorney-client privileged documents.

### III.     The documents are protected by the work-product doctrine.

The work-product doctrine was initially established by the United State Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947), and was later codified under Rule 26 of the Federal Rules of Civil Procedure.  Its purpose is to protect from disclosure "the mental

impressions, conclusions, opinions or other legal theories of an attorney or other representatives of a party concerning the litigation."  Fed. R. Civ. P. 26(b)(3).

While Florida law governs the applicability of privilege in a federal diversity suit, the work product doctrine is governed by federal law.  Under federal law, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . ."  Fed.R.Civ.P. 26 (b)(3)(A).  An attorney's "fact" work product is discoverable only upon a showing of "substantial need" by the party seeking its discovery, in addition to "an inability to secure the substantial equivalent of the materials sought . . . without undue hardship."  *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994).  However, "opinion" work product, documents that "reflect an attorney's mental impressions," are not discoverable even upon a showing of substantial need and undue hardship, as this material enjoys "almost absolute immunity from discovery."  *United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir. 2001).

In essence, Plaintiff's sought-after documents are GEICO's claim file for Ms. Muro's claim.  A document which was created by GEICO in anticipation of possible litigation against it's insured.  Federal Courts have typically held that an insurer's claim file may be discoverable in a bad faith action against that insurer as the work product doctrine will not overcome the substantial need a plaintiff has for the contents of a claim file.  *Woolbright v. GEICO General Insurance, Co.*, 2012 WL 12864931 (S.D. Fla. 2012).  However, Plaintiff will not be able to articulate any necessity for GEICO's claim file, as the present bad faith action is against Nationwide. Accordingly, as there is no need for GEICO's claim file in the present bad faith action as Nationwide's handling of Ms. Muro's claim will not provide admissible evidence as to whether or not Nationwide acted in bad faith.

9

As such, this Court must quash the subpoena. Further, it is clear that good cause exists for the entry of a protective order prohibiting Plaintiffs from obtaining these work-product protected documents.

### IV.     The documents are not relevant to the present action.

The duty of good faith owed by an insurance carrier to its insureds is explicitly set forth under Florida law. *See Boston Old Colony v. Gutierrez*¸ 386 So.2d 783 (Fla. 1980). Specifically, the Florida Supreme Court in *Boston Old Colony Ins. Co. v. Gutierrez* articulated six (6) obligations of an insurance company when exercising its duty of good faith:

> An insurer is obligated to (1) "advise the insured of settlement opportunities"; (2) "advise as to the probable outcome of the litigation"; and "warn of the possibility of an excess judgment"; (3) "advise the insured of any steps he might take to avoid same"; (4) "investigate the facts"; (5) "give fair consideration to a settlement offer that is not unreasonable under the facts;" and (6) "settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so."

*Id.* at 785. The aforementioned obligations clearly establish that only facts and evidence exclusively concerning the handling of the claim at issue are relevant in a bad faith action. Stated otherwise, the manner in which an insurer handles another claim has no bearing whatsoever on whether the same fulfilled its duty of good faith in the *actual* claim at issue. As such, any evidence testimony, or argument that would compare claims handling in that regard is improper and inadmissible.  *Johnson v. GEICO Gen. Ins. Co.*, 318 Fed. Appx. 847, 850 (11th Cir. 2009) (rejecting as irrelevant the comparison of the claims handling of the bodily injury claim and the uninsured motorist claim).

Based upon the forgoing obligations, both federal and Florida courts have routinely precluded a party from attempting to prove that an insurer handled a specific claim in bad faith through testimony and/or evidence pertaining entirely to the insurer's handling of another

independent claim. The rationale being that such evidence would likely significantly mislead, confuse, and distract the jury from the proper focus of the case—the insurer's claims handling of the claim at issue. *See Moore v. GEICO Gen. Ins. Co.*, 2017 WL 565028 (M.D Fla. Feb. 13, 2017); *United Auto Ins. Co. v. Estate of Levine ex rel* Howard, 87 So.3d 782, 785-86 (Fla. 3d DCA 2011)(stating that conducting "a trial within a trial" on the insurer's handling of other claims ran the risk of distracting the jury from its proper focus on the insurer's handling of the claim at issue in the bad faith case.); *Hilson v. GEICO Gen. Ins. Co.*, 2013 WL 12156414, at \*2 (M.D. Fla. 2013) (granting motion *in limine* to exclude evidence of other insurer's claims handling, because such evidence may confuse the jury); *Mendez v. Unitrin Direct Property & Cas. Ins. Co.*, 622 F. Supp. 2d 1233, 1239 (M.D Fla. 2007)(granting a new trial based, in part, on the admission of evidence regarding the claims handling of the uninsured motorist insurance company, because the evidence may have confused the jury); *Johnson* at 850. With the exception of Johnson, which dealt with comparing the handling of a bodily injury and uninsured motorist claim from the same carrier, the cases cited above dealt with the issue of comparing claims handling between different carriers. Ultimately the reasoning for excluding such evidence was because the evidence of other claims not at issue in the cases at bar were irrelevant and prejudicial as it would only confuse, mislead, and distract a jury from the pertinent issues. That same rationale should be applied here.

The sole reason Plaintiff could be requesting, in essence, the contents of GEICO's claim file, is to compare GEICO's handling of Ms. Muro's claim, which settled, to that of Nationwide's in order to show Nationwide acted in bad faith. The issue of bad faith in the instant case concerns only the manner in which Nationwide handled Ms. Muro's claim. Any information as to how GEICO handled Ms. Muro's claim has no bearing on the ultimate issue in this action: whether Nationwide acted in bad faith in handling Ms. Muro's claim. The production of GEICO's claim

file for an irrelevant and immaterial claim does not assist in proving or disproving whether Nationwide acted in bad faith.  Accordingly, as GEICO's claim file is not relevant to the present action, pursuant to Rule 45 of the Federal Rules of Civil Procedure, this Court must quash the subpoena. Further, it is clear that good cause exists for the entry of a protective order prohibiting Plaintiffs from obtaining these irrelevant documents.

### V.      The production requests are overly broad and unduly burdensome.

While Plaintiff's counsel has agreed to limit the scope of their subpoena to the GEICO entities that may have been involved in the underlying claim, Plaintiff's subpoenas are nevertheless overly broad and unduly burdensome as to the requests it makes to GEICO Indemnity and GEICO General.  Specifically, the requests seek **all** correspondence, **all** communications, **all** emails, etc., without any limitation or specificity.  Any search for documents within these two entities would be untenable, as it would require literally searching every document within the possession of these entities to see if they referenced Ms. Muro's claim. Accordingly, as the request is unduly burdensome and overly broad, pursuant to Rule 45 of the Federal Rules of Civil Procedure, this Court must quash the subpoena.  Further, it is clear that good cause exists for the entry of a protective order prohibiting Plaintiffs from the unduly burdensome and overly broad request.

### CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3), the undersigned has conferred with counsel for Plaintiff in a good faith attempt to resolve the issues raised in this motion, Plaintiff's counsel has agreed to limit its subpoenas in this matter to only those GEICO entities involved in the underlying claim. As to the other relief being sought, Plaintiff's counsel objects to the relief being sought.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of November, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached Service

List in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

s/CHRISTOPHER R. MACHADO
**B. RICHARD YOUNG**
Florida Bar No.: 442682
bryoung@flalawyer.net
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
**CHRISTOPHER R. MACHADO**
Florida Bar No.: 111622
cmachado@flalawyer.net
Young, Bill, Boles, Palmer,
Duke & Thompson, P.A.
One Biscayne Tower
2 South Biscayne Boulevard
Suite 3195
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
Counsel for Defendant, Progressive
American Insurance Company.

<u>SERVICE LIST</u>
**SANDRA DAVIS,**
v.
**NATIONWIDE INSURANCE COMPANY OF AMERICA,**
**CASE NO.: 9:19-cv-80606-RS**

**TODD STEPHEN STEWART, ESQ.**
The Law Offices of Todd S. Stewart, P.A.
824 West Indiantown Road
Jupiter, FL 33458

Phone: (561) -743-2002
Fax: 743-2009
Email: Todd@TrialCounselor.com
Counsel for Plaintiff

**KARL EDWARD STURGE, ESQ.**
Marlow Adler Abrams Newman & Lewis, P.A.
4000 Ponce De Leon Boulevard
Suite 570
Coral Gables, FL 33146
Phone: (305)-460-6526
Fax: (305)-446-3667
Email: ksturge@marlowadler.com
Counsel for Defendant